1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11   JEFFREY ROBERTS, an individual,          Case No.:  24-CV-2433-BEN-BLM

12                              Plaintiff,    **ORDER**

13   v.

14   IFS TOPCO, LLC., a Delaware limited
     liability company, BradyIFS
15   MANAFEMENT HOLDCO, LLC, a
16   Delaware limited liability company, and
     DOES 1 through 25, inclusive,
17
                               Defendant.
18

19

20   **I.   INTRODUCTION**

21       Before the Court is Plaintiff Jeffrey Robert's Motion to Remand this action to the San

22   Diego Superior Court and request for attorney's fees and costs under 28 U.S.C. §

23   1447(c)[1]. Having reviewed the parties' briefing, declarations, and supporting exhibits, the

24   _____

25

26   [1] "A motion to remand the case on the basis of any defect other than lack of subject
     matter jurisdiction must be made within 30 days after the filing of the notice of removal
27   under section 1446(a)[28USCS § 1446(a)]. If at any time before final judgment it appears
     that the district court lacks subject matter jurisdiction, the case shall be remanded. An
28   order remanding the case may require payment of just costs and any actual expenses,

                                        1

1  Court finds that removal was improper. Accordingly, the motion to remand is

2  GRANTED.

3  **II.    FACTUAL BACKGROUND/ PROCEDURAL HISTORY**

4       Plaintiff initially filed suit in state court on October 16, 2024, asserting four

5  California state law claims challenging non-compete and forum-selection clauses: (1)

6  declaratory relief, (2) injunctive relief, (3) violation of California Labor Code § 925, and

7  (4) California Unfair Competition Law, California Business and Professional Code §

8  17200. The Plaintiff did not plead any claim under federal law.

9       On November 26, 2024, Plaintiff filed his First Amended Complaint (FAC) in state

10  court, adding a fifth cause of action for breach of contract based on an alleged failure to

11  pay severance benefits under a Severance Agreement. However, the state court did not

12  accept the filing until January 2, 2025.

13       Defendant filed a Notice of Removal on December 23, 2024. The Notice was

14  based solely on the Employee Retirement Income Security Act of 1974 (ERISA)

15  preemption of the original four state-law claims. The removal did not reference the FAC

16  or the breach of contract claim.

17  **III.    LEGAL STANDARD**

18    **A. Removal Jurisdiction**

19       Under 28 U.S.C. § 1441(a), a defendant may remove a civil action from a state to a

20  federal court if the federal court has original jurisdiction. Federal question jurisdiction,

21  defined under 28 U.S.C. § 1331, applies to cases "arising under" federal law. Courts

22  determine removal jurisdiction based on the operative complaint at the time of removal.

23  As the Ninth Circuit held in *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th

24  Cir. 2006), post-removal amendments do not affect removability. The removing party

25

26  ─────────────────────

27  including attorney fees, incurred as a result of the removal. A certified copy of the order
   of remand shall be mailed by the clerk to the clerk of the State court. The State court may
28  thereupon proceed with such case."

1    bears the burden of establishing jurisdiction, and courts strictly construe the removal

2    statute against removal, resolving any doubts in favor of remand. *Gaus v. Miles, Inc.*, 980

3    F.2d 564, 566 (9th Cir. 1992).

4        The "well-pleaded complaint rule" governs federal question jurisdiction, requiring

5    a federal question to appear on the face of the plaintiff's complaint. *Caterpillar, Inc. v.*

6    *Williams*, 482 U.S. 386, 392 (1987). An exception applies when a federal statute, such as

7    ERISA, completely preempts a state law claim, making the claim removable. *Aetna*

8    *Health Inc. v. Davila*, 542 U.S. 200, 207–08 (2004); *Beneficial Nat'l Bank v. Anderson*,

9    539 U.S. 1, 8 (2003).

10   **B. ERISA complete Preemption**

11       ERISA preempts state law claims that fall within its civil enforcement provisions

12   under 29 U.S.C. § 1132(a). *Davila*, 542 U.S. at 208–09. The Ninth Circuit Court applies

13   the two-part test from *Davila*, 542 U.S. at 210, to determine complete preemption. A state

14   law claim is wholly preempted only if: (1) the plaintiff could have brought the claim

15   under ERISA section 1132(a), and (2) the defendant's actions implicate no independent

16   legal duty. *Fossen v. Blue Cross & Blue Shield of Mont., Inc.*, 660 F.3d 1102, 1107–08

17   (9th Cir. 2011); *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 946

18   (9th Cir. 2009). Both prongs must be met for removal to be proper. *Fossen*, 660 F.3d at

19   1108. A claim merely "relating to" an ERISA plan under 29 U.S.C. § 1144(a) does not

20   suffice for complete preemption unless section 1132(a) applies. *Marin Gen. Hosp.*, 581

21   F.3d at 950.

22       A severance arrangement qualifies as an ERISA plan only if it requires an

23   "ongoing administrative scheme" involving discretionary decisions beyond ministerial

24   tasks like calculating lump-sum payments. *Fort Halifax Packing Co. v. Coyne*, 482 U.S.

25   1, 12 (1987); *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1323 (9th Cir. 1992). Individualized

26   agreements fall outside ERISA if they do not require plan administration. *Graham v.*

27   *Balcor Co.*, 146 F.3d 1052, 1055 (9th Cir. 1998). Both prongs must be met for complete

28   preemption to apply. *Marin Gen. Hosp.*, 581 F.3d at 947.

24-CV-2433-BEN-BLM

1    **IV.    DISCUSSION**

2    **I.    ERISA COMPLETE PREEMPTION ANALYSIS UNDER *DAVILA***

3         Defendants argue that ERISA completely preempts Plaintiff's breach of contract

4    claim, establishing federal subject matter jurisdiction under section 1331. They assert that

5    Plaintiff's claim for unpaid severance benefits arises from the ERISA-governed "Envoy

6    Solutions Severance Plan," allegedly implemented at the time of his termination. In

7    contrast, Plaintiff maintains that his claim stems solely from a separately negotiated

8    Severance Agreement, which ERISA does not govern.

9         **a.  Plaintiff Could Not Have Brought His Claim Under § 1132(a)**

10        The first prong asks whether the plaintiff seeks to "recover benefits due under the

11   terms of [an ERISA] plan, to enforce rights under the terms of the plan, or to clarify

12   rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The

13   Court finds that Plaintiff's breach of contract claim does not meet this standard.

14   A one-time, lump-sum payment triggered by a single event requires no administrative

15   scheme to satisfy the employer's obligation. *Fort Halifax Packing Co.*, 482 U.S. at 12.

16   "[T]o do little more than write a check hardly constitutes the operation of a benefit plan."

17   *Id*. In *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 259 (4th Cir. 2002), the

18   court held that ERISA did not preempt a state-law breach of contract claim where the

19   severance provision operated independently of the ERISA plan, did not reference it, and

20   provided greater benefits without the plan's conditions. Similarly, in *Rodowicz v. Mass.*

21   *Mut. Life Ins. Co.*, 192 F.3d 162, 170–72 (1st Cir. 1999), the court found that a severance

22   package not labeled or administered as an ERISA plan—and containing no ERISA

23   reference—did not fall under ERISA, as it lacked the necessary ongoing administrative

24   scheme.

25        Here, Plaintiff's claim arises from a standalone Severance Agreement executed on

26   July 2, 2024. In exchange for Plaintiff's mutual release and reaffirmation, the agreement

27   provides: (i) a fixed sum of $482,669 paid in 26 equal installments; (ii) a prorated bonus

28

24-CV-2433-BEN-BLM

1  of $118,254; (iii) a lump-sum COBRA offset (which Plaintiff waived); and (iv) fully

2  subsidized outplacement services for three months. The agreement contains no reference

3  to ERISA, no mention of a "plan administrator," "claims process," or "fiduciary"

4  obligations.

5      The agreement, governed by California law, includes mutual release,

6  confidentiality, and integration clauses, indicating it was a product of negotiation—not

7  mandated by any plan.

8      Defendants argue that the agreement falls under the Envoy Solutions Severance

9  Plan, adopted in May 2023 as part of the company's ERISA-governed Health and

10  Benefits Plan. They rely on plan documents outlining eligibility, severance schedules

11  based on employee level and tenure, and general ERISA language. (Salinas Decl., Exs.

12  A–D). However, these documents do not reference Plaintiff by name or show that his

13  severance payments followed plan terms. As the Fifth Circuit held in *Wells v. Gen.*

14  *Motors Corp.*, 881 F.2d 166, 176 (5th Cir. 1989), making payments under a voluntary

15  termination "plan" does not automatically create an ERISA-governed benefit plan.

16      Under Ninth Circuit precedent, an individualized severance agreement is not an

17  ERISA plan when: (a) payments are fixed and determinable; (b) no discretion is needed

18  to calculate or adjudicate benefits; and (c) the employer has no ongoing administrative

19  obligations. *see Delaye v. Agripac, Inc.*, 39 F.3d 235, 237 (9th Cir. 1994); *Velarde v.*

20  *PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1317 (9th Cir. 1997).

21      Here, the Severance Agreement lacks ERISA's defining features. The severance

22  terms were predetermined, required no discretion, and involved only a finite series of

23  payments. Even if Defendants maintain a broader ERISA plan for other employees,

24  Plaintiff's legal claim arises solely from the Severance Agreement—not that plan.

25      As the Seventh Circuit stated in *Bowles v. Quantum Chem. Co.*, 266 F.3d 622, 631

26  (7th Cir. 2001), ERISA preempts a state-law breach of contract claim only if adjudicating

27  the claim requires interpreting or applying an ERISA plan. A severance arrangement falls

28  under ERISA only if it demands an ongoing administrative program. Here, Plaintiff's

24-CV-2433-BEN-BLM

1    state-law claim, at most, bears a tangential relation to any benefits plan and does not

2    support federal removal. See *Fitzgerald v. Celergy Networks Inc.*, 67 F. App'x 390, 392

3    (9th Cir. 2003).

4        Accordingly, the Court concludes that Plaintiff could not have brought this claim

5    under section 1132(a), and the first *Davila* prong is not satisfied.

6    ### b. Plaintiff's Claim Arises from an Independent Legal Duty

7        Even if Plaintiff's claim bore a tangential relationship to an ERISA plan, it still

8    would not be wholly preempted without satisfying the second prong of *Davila*: that no

9    independent legal duty underlies the claim.

10       The Ninth Circuit has consistently held that breach of contract claims based on

11   individually negotiated agreements arise from state law, not ERISA. *see Marin Gen.*, 581

12   F.3d at 950 ("a claim that arises from a separate agreement does not fall under ERISA

13   preemption"); *Graham*, 146 F.3d at 1055 (ERISA did not preempt a severance agreement

14   concerning a single employee and operating outside the plan's administration).

15

16       Plaintiff seeks to enforce obligations—timely severance payment, COBRA

17   reimbursement, and outplacement services—that the Severance Agreement expressly

18   outlines. These obligations do not depend on or derive from ERISA plan language, nor do

19   they require interpreting any plan provisions. As in *Damon v. Korn/Ferry Int'l*, No. CV

20   15-2640-R, 2015 WL 2452809, at *3 (C.D. Cal. May 19, 2015), where the plaintiff's

21   breach of contract and UCL claims were rooted in an employment agreement

22   independent of an ERISA plan, Plaintiff's claims rely solely on state law. They do not

23   require the interpretation of an ERISA plan and therefore stem from an independent legal

24   duty.

25       The Severance Agreement also imposes obligations not found in any plan

26   documents, including a mutual release of claims, post-termination reaffirmation,

27   confidentiality, and a California choice-of-law clause. California law, not ERISA,

28   governs both the existence and breach of these obligations. *see Marin Gen.*, 581 F.3d at

943 (state-law claims based on an independent oral contract were not completely preempted by ERISA).

Defendants cite *Bogue*, where the court found complete preemption due to a severance plan requiring an individualized inquiry into "substantially equivalent employment." But *Bogue* is distinguishable. Here, no discretionary eligibility determination or factual assessment was needed—Plaintiff became entitled to severance upon termination, conditioned only on executing standard documents.

Even if the plan and agreement overlap in subject matter, Plaintiff's claim arises from duties that neither originate in ERISA nor require enforcement through its civil enforcement scheme. The Sixth Circuit reached a similar conclusion in *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 452 (6th Cir. 2003), finding state-law claims were not preempted when their effect on the plan was merely "tenuous, remote or peripheral."

## II.   Conclusion

The Court finds that Plaintiff's breach of contract claim:

1. Could not have been brought under 29 U.S.C. § 1132(a); and
2. Arises from a legal duty that exists independently of ERISA.

Because neither prong of the *Davila* test is satisfied, ERISA does not completely preempt the breach of contract claim, and removal based on federal question jurisdiction is improper. **Accordingly, IT IS HEREBY ORDERED that this case is REMANDED to the Superior Court of the State of California for the County of San Diego.**

**IT IS SO ORDERED.**

 DATED:    April 3, 2025

_____
**HON. ROGER T. BENITEZ**
United States District Judge

24-CV-2433-BEN-BLM